**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| MERSCORP HOLDINGS, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> MERS, INC, et al., <br><br> Defendants. | Case No. 16-cv-04380-BLF <br><br> **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION, AND REQUEST TO SERVE VIA PUBLICATION** <br><br> **[RE: ECF 12]** |

Plaintiffs MERSCORP Holdings, Inc. and Mortgage Electronic Registration Systems, Inc. sue Defendants MERS, Inc and Mortgage Electronic Registration System, Inc. (MERS) for trademark infringement and related claims. Presently before the Court is Plaintiffs' Ex Parte Application for Temporary Restraining Order, Order to Show Cause Re: Preliminary Injunction, and Request to Serve via Publication.

For the reasons discussed below, the application for a temporary restraining order ("TRO") is GRANTED IN PART AND DENIED IN PART, the application for an Order to Show Cause Re: Preliminary Injunction is GRANTED, and the request for permission to serve Defendants via publication is GRANTED.

**I.   BACKGROUND**

Plaintiffs present evidence of the following facts. Plaintiff MERSCORP Holdings, Inc. owns and operates the MERS® System database, "a national electronic registry system that tracks the changes in servicing rights and beneficial ownership interests in mortgage loans that are registered on the system." Marmion Decl. ¶ 2, ECF 12-4. The MERS® System database is the only national database that provides free information regarding the servicers of registered home mortgages. *Id.* The MERS® System database is used by local governmental entities to identify

United States District Court
Northern District of California

1  the parties responsible for maintaining vacant properties. *Id.*

2  Plaintiff Mortgage Electronic Registration System, Inc., a wholly-owned subsidiary of
3  MERSCORP Holdings, Inc., serves as the beneficiary or mortgagee of record and nominee for the
4  beneficial owner of mortgage loans registered on the MERS® System database. Marmion Decl. ¶
5  4.

6  While there have been various iterations of their company names over time, Plaintiffs have
7  continuously used the trade names "MERSCORP" and "Mortgage Electronic Registration
8  Systems, Inc." in connection with the above-described services since 1995. Marmion Decl. ¶ 2
9  and n.1. Additionally, Plaintiff MERSCORP Holdings, Inc. owns the federal trademark
10 registration for the MERS® word mark, which was issued in 1997. *Id.* ¶ 6. That federal
11 registration has obtained incontestable status. *Id.* ¶ 7 and Exh. C.

12 On December 16, 2015, an individual named Jack Lyles filed Articles of Incorporation
13 with the California Secretary of State for "MERS, Inc," and on the same date an individual named
14 Connie Vargas filed Articles of Incorporation with the California Secretary of State for "Mortgage
15 Electronic Registration System, Inc. (MERS)." Marmion Decl. ¶ 10. On March 29, 2016,
16 Statements of Information were filed with the California Secretary of State indicating that MERS,
17 Inc and Mortgage Electronic Registration System, Inc. (MERS) would be in the business of
18 "loans." *Id.* ¶ 11. The documents filed with the Secretary of State identified the corporate address
19 of MERS, Inc as 248 3rd Street, #42, Oakland, California 94607, and the corporate address of
20 Mortgage Electronic Registration System, Inc. (MERS) as 248 3rd Street, #429, Oakland,
21 California 94607. *Id.* ¶ 12.

22 Plaintiffs retain a trademark monitoring vendor to provide alerts as to any suspected
23 trademark infringement. Marmion Decl. ¶ 9. That vendor informed Plaintiffs of the incorporation
24 of Defendants in California. *Id.* ¶ 10. In April and May 2016, Plaintiffs sent Defendants multiple
25 cease and desist letters to the addresses set forth in their corporate registration records. *Id.* ¶¶ 13-
26 14. All of the letters were returned as undeliverable. *Id.* ¶ 14. The street address provided in
27 Defendants' corporate records is a business, Jack London Mail, which offers packing and mailing
28 services as well as rental mailboxes. Nguyen Decl., ¶ 2. Mailbox number 42 – the registered

address of MERS, Inc – does not exist. *Id.* ¶ 3. Mailbox number 429 – the registered address of Mortgage Electronic Registration System, Inc. (MERS) – does not belong to Connie Vargas or to an entity named Mortgage Electronic Registration System, Inc. (MERS). *Id.* ¶ 4. The owner of Jack London Mail states that approximately six months ago, Jack London Mail began receiving mail and service of process documents intended for Plaintiffs on a regular basis, generally once or twice per week. *Id.* ¶¶ 5, 7. The mail is rejected and process servers are turned away. *Id.* ¶ 6.

Plaintiffs hired an investigator to locate Defendants. Phillips Decl. ¶ 3, ECF 12-3. The investigator could not locate Jack Lyles, who is listed with the California Secretary of State as the corporate officer for MERS, Inc *Id.* The investigator located a residential address and cellular telephone number for a Connie Vargas, who is listed with the California Secretary of state as the corporate officer for Mortgage Electronic Registration System, Inc. (MERS). *Id.* ¶ 4. However, when Plaintiffs' counsel called the cellular telephone number, the woman who answered denied being Connie Vargas and hung up. *Id.* ¶ 5.

Plaintiffs filed this action on August 3, 2016, alleging claims for: (1) trademark infringement under 15 U.S.C. § 1114; (2) false designation of origin under 15 U.S.C. § 1125(a); and (3) unfair competition under California Business & Professions Code § 17200.

Plaintiffs now seek a TRO enjoining Defendants, their officers, agents, servants, employees, and attorneys and all those in active concert or participation with them from the following conduct:

1. Using the MERS® Mark, MERSCORP trade name, or Mortgage Electronic Information Systems, Inc. trade name, or any confusingly similar versions thereof, in commerce in the United States;

2. Maintaining an active corporation with the name MERS, Inc or Mortgage Electronic Registration System, Inc. (MERS) or any confusingly similar name; and

3. Assisting, aiding, or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (i) and (ii) above.

Pls.' Proposed Order, ECF 12-1.

Plaintiffs also request that the Court order the California Secretary of State to:

1. Suspend the incorporation for MERS, Inc, entity no. C3851651, and Mortgage Electronic Registration System, Inc. (MERS), entity no. C3851652; and

2. Post an order and notice of the correct address for Plaintiffs, as follows: 1818 Library Street, Suite 300, Reston, Virginia 20190 to its public records for Defendants, including but not limited to its online registry of business entities.

Pls.' Proposed Order, ECF 12-1.

## II. LEGAL STANDARD

### A. Notice

The Court may issue a TRO without notice to the adverse party only if (1) "specific facts in an affidavit or a verified complaint" show that immediate and irreparable injury will occur before the adverse party can be heard and (2) the movant's attorney certifies in writing what efforts were made to give notice and the reasons why notice should not be required. Fed. R. Civ. P. 65(b). In addition, this district's Civil Local Rules require that "[u]nless relieved by order of a Judge for good cause shown, on or before the day of an ex parte motion for a temporary restraining order, counsel applying for the temporary restraining order must deliver notice of such motion to opposing counsel or party." Civ. L.R. 65-1(b).

Plaintiffs have submitted declarations of counsel, the investigator hired to locate Defendants, and the owner of Jack London Mail documenting Plaintiffs' unsuccessful efforts to locate Defendants. *See* Phillips Decl., ECF 12-3; Marmion Decl., ECF 12-4; Nguyen Decl., ECF 12-12; and Imperial Decl., ECF 12-13. Those declarations show that for at least six months, a significant amount of mail intended for Plaintiffs has been misdirected to Jack London Mail. Marmion Decl. ¶ 17-18. The mail is rejected by Jack London Mail and does not reach Plaintiffs. *Id.* ¶ 18-19. Process servers and delivery personnel with documents for Plaintiffs are turned away from Jack London Mail. *Id.* Plaintiffs' counsel states that Plaintiffs are being irreparably harmed by these circumstances, as they are being deprived of their rights and ability to receive mail and service of process, which threatens their ability to conduct business. *Id.* ¶ 19. Counsel also notes that Plaintiffs manage a large volume of legal cases, and their ability to meet important deadlines is impaired by the misdirected mail, process servers, and delivery personnel. *Id.* ¶¶ 19-20.

1  The Court concludes that Plaintiffs have met the requirements of Federal Rule of Civil Procedure 65(b) and Civil Local Rule 65-1(b). The Court thus may issue the requested TRO if Plaintiffs make an appropriate showing under the legal standard set forth below.

### B. Standard for Issuing TRO

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001); *Lockheed Missile & Space Co. v. Hughes Aircraft*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.* at 20. "[I]f a plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

### III. DISCUSSION

#### A. TRO Directed to Defendants

The Court has no difficulty concluding that Plaintiffs are entitled to the requested temporary injunctive relief directed to Defendants' conduct.

#### 1. Likelihood of Success

Plaintiffs have demonstrated a likelihood of success with respect to their claims for trademark infringement (Claim 1) and false designation of origin (Claim 2). Taking those claims in order, a plaintiff asserting trademark infringement must demonstrate that it "owns a valid mark, and thus a protectable interest" and that Defendants' "use of the mark 'is likely to cause confusion, or to cause mistake, or to deceive.'" *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1196 (9th Cir.

2009) (quoting *KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 602 (9th Cir. 2005); *see also* 15 U.S.C. § 1114(1)(a), (b). Plaintiffs have demonstrated that MERSCORP Holdings, Inc. owns the federal trademark registration for the MERS® word mark, which was issued in 1997. Marmion Decl. ¶ 6 and Exhs. A, B. The mark has become incontestable. *Id.* ¶ 7 and Exh. C.

"To determine whether a likelihood of consumer confusion exists, our court relies on the eight-factor *Sleekcraft* test, which reviews: (1) the strength of the mark; (2) proximity or relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines." *JL Beverage Co., LLC v. Jim Beam Brands Co.*, --- F.3d ----, 2016 WL 3770484, at *5 (9th Cir. July 14, 2016) (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979), *abrogated in part on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 (9th Cir. 2003)). "The factors are non-exhaustive and applied flexibly; the *Sleekcraft* factors are not intended to be a rote checklist." *Id.* (internal quotation marks and citation omitted).

Plaintiffs present evidence that the MERS® word mark has been used by MERSCORP Holdings, Inc. or its predecessors continuously since 1997 in connection with mortgage registration services, which include the MERS® System database (factor 1). Marmion Decl. ¶¶ 2, 6-8. Defendants filed Statements of Information with the California Secretary of State indicating that they would be in the business of "loans" (factor 2) and Defendants' company names are confusingly similar to the MERS® mark (factor 3). *Id.* ¶ 11. There is ample evidence of actual confusion in that mail, process servers, and delivery persons attempting to reach Plaintiffs have attempted to do so at Defendants' address of record (factor 4). *Id.* ¶¶ 17-18. Plaintiffs have not made a specific showing as to marketing channels used (factor 5), but the confusion regarding Plaintiffs' addresses suggests a low degree of care is likely to be exercised by consumers (factor 6). The closeness of Defendants' company names to the MERS® mark suggests an intent to confuse the public (factor 7). The likelihood of expansion of product lines is unknown (factor 8).

This showing is sufficient to establish a likelihood of customer confusion and thus, in conjunction with Plaintiffs' showing of ownership of the MERS® word mark, is sufficient to establish a likelihood of success on the merits of Claim 1.

A plaintiff asserting false designation of origin based upon similar trade names must make virtually the same showing. *See Accuride Int'l, Inc. v. Accuride Corp.*, 871 F.2d 1531, 1534 (1989) ("[T]he same broad standards of protection apply to trademarks and trade names."). "[L]ikelihood of confusion is unquestionably the key to a finding of infringement in either case." *Id.* at 1535. The Ninth Circuit has held specifically that the *Sleekcraft* test is an appropriate means for determining likelihood of confusion with respect to a claim for false designation of origin based upon similar trade names. *Id.* at 1536. Applying the *Sleekcraft* test here, Plaintiffs present evidence that they have continuously used the trade names "MERSCORP" and "Mortgage Electronic Registration Systems, Inc." in connection with mortgage related services since 1995 (factor 1). Marmion Decl. ¶ 2 and n.1. Defendants' company names are confusingly similar to Plaintiffs' company names (factor 3). Evaluation of the remaining factors is identical to the evaluation performed above with respect to the trademark claim. Accordingly, Plaintiffs have demonstrated a likelihood of success on the merits of Claim 2.

### 2.  **Irreparable Harm**

Plaintiffs have demonstrated that they will suffer irreparable harm absent issuance of the TRO. For at least six months, a significant amount of mail intended for Plaintiffs has been misdirected to Jack London Mail, as have process servers and delivery personnel. Marmion Decl. ¶ 17-19. Plaintiffs are being irreparably harmed by these circumstances, as they are being deprived of their rights and ability to receive mail and service of process, which threatens their ability to conduct business. *Id.* ¶ 19. Plaintiffs' counsel notes specifically that Plaintiffs manage a large volume of legal cases, and their ability to meet important deadlines is impaired by the misdirected mail, process servers, and delivery personnel. *Id.* ¶¶ 19-20.

### 3.  **Balance of Equities**

As discussed above, Plaintiffs are suffering continuous harm as a result of Defendants' use of confusingly similar business names. However, it does not appear that either of the defendant

companies is a going concern, since Plaintiffs' diligent attempts to locate Defendants were unsuccessful. As a result, it is unclear how a TRO precluding Defendants from using their business names would cause them harm.

### 4. Public Interest

Public policy favors granting an injunction when there is a likelihood of consumer confusion. See Playboy Enterprises, Inc. v. Baccarat Clothing Co., 692 F.2d 1272, 1275 (9th Cir. 1982) ("In addition to the harm caused the trademark owner, the consuming public is equally injured by an inadequate judicial response to trademark infringement.").

Accordingly, Plaintiffs' request for a TRO directed to Defendants' conduct is GRANTED.

### B. TRO Directed to the California Secretary of State

Plaintiffs request not only an order enjoining Defendants from using the subject trademark and trade names, but also an order requiring the California Secretary of State to suspend the incorporation for Defendants and post Plaintiffs' address to California's public records for Defendants. Plaintiffs have not cited, and the Court has not discovered, any statute or case law granting this Court authority to order the California Secretary of State to take the requested actions. Plaintiffs argued at the hearing that the Court could issue the requested order based upon its inherent authority or based upon analogy to courts' statutory authority to cancel trademark registrations under the Lanham Act, 15 U.S.C. § 1119 and under California Business & Professions Code § 14230. The Court is not persuaded that these authorities provide a sufficient basis for it to issue a TRO directed to the California Secretary of State.

Accordingly, Plaintiffs' application for TRO is DENIED WITHOUT PREJUDICE with respect to Plaintiffs' request for an order directed to the California Secretary of State.

### C. Security

Federal Rule of Civil Procedure 65(c) provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Ninth Circuit has "recognized that Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*."

*Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (internal quotation marks and citation omitted) (italics in original). "The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id.*

As discussed above, it does not appear that either of the defendant companies is doing business at this time, since Plaintiffs have been unable to locate them. Thus it does not appear that enjoining Defendants from using their business names would cause them harm. Under these circumstances, the Court finds it appropriate to issue the TRO without requiring Plaintiffs to provide security.

### D. Duration of TRO

The TRO will expire "at the time after entry – not to exceed 14 days – that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension." Fed. R. Civ. P. 65(b)(2). "The reasons for an extension must be entered in the record." *Id.* Because Plaintiffs have been unable to locate Defendants, Plaintiffs have requested leave to effect service of process via publication. As discussed below, the Court finds that request to be well-taken and will grant Plaintiffs' request to effect service via publication in accordance with the requirements of California Code of Civil Procedure § 415.50. The minimum time to effect service under that statute exceeds fourteen days. The Court therefore finds good cause to extend the TRO an additional fourteen days, for a total of twenty-eight days, until September 20, 2016.

### E. Order to Show Cause Re: Preliminary Injunction

The Court HEREBY SETS a hearing on Plaintiffs' motion for a preliminary injunction for Tuesday, September 20, 2016, at 2:00 p.m., twenty-eight days after issuance of the TRO. A separate Order to Show Cause Re: Preliminary Injunction is issued contemporaneously with the present order.

### F. Notice via Publication

Plaintiffs have presented evidence establishing that despite diligent efforts that have been unable to locate Defendants. The Court therefore GRANTS Plaintiffs' request for leave to effect

service of process via publication that meets the requirements of California Code of Civil Procedure 415.50. Those requirements are addressed in detail in a separate order issued contemporaneously with the present order.

**IV.   ORDER**

    (1)   Plaintiffs' application for TRO is GRANTED IN PART as follows, but is DENIED WITHOUT PREJUDICE with respect to Plaintiffs' request for an order directed to the California Secretary of State:

Defendants, their officers, agents, servants, employees, and attorneys and all those in active concert or participation with them are ENJOINED from the following conduct:

    1.   Using the MERS® Mark, MERSCORP trade name, or Mortgage Electronic Information Systems, Inc. trade name, or any confusingly similar versions thereof, in commerce in the United States;

    2.   Maintaining an active corporation with the name MERS, Inc or Mortgage Electronic Registration System, Inc. (MERS) or any confusingly similar name; and

    3.   Assisting, aiding, or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (i) and (ii) above.

    (2)   The TRO is granted without security;

    (3)   The TRO shall remain in effect for a total of twenty-eight days, until September 20, 2016, unless otherwise ordered by the Court;

    (4)   Plaintiffs' motion for preliminary injunction is SET FOR HEARING on September 20, 2016, at 2:00 p.m.;

    (5)   Plaintiffs' request for leave to effect service of process via publication is GRANTED as set forth herein; and

    (6)   The Court separately issues a TRO and OSC Re: Preliminary Injunction directed to Defendants, compelling their compliance with this order, and setting a hearing on Plaintiff's motion for preliminary injunction.

Dated: August 23, 2016

    _____
    BETH LABSON FREEMAN
    United States District Judge